**Viktoria Safarian**, OSB No. 175487
Email: viktoria@lmhlegal.com
**Jesse Merrithew**, OSB No. 074564
Email: jesse@lmhlegal.com
Levi Merrithew Horst PC
610 SW Alder Street, Suite 415
Portland, Oregon 97205
Telephone: (971) 229-1241
Facsimile: (971) 544-7092

      Attorneys for James Mattox

**Juan C. Chavez**, OSB #136428
Email: jchavez@ojrc.info
**Brittney Plesser**, OSB #154030
Email: bplesser@ojrc.info
**Alex Meggitt**, OSB #174131
Email: ameggitt@ojrc.info
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97208
Telephone: 503 944-2270
Facsimile: 971-275-1839

      Attorneys for Aaron Cantu

**Juan C. Chavez**, OSB #136428
Email: jchavez@ojrc.info
**John Schlosser,** OSB # 104959
Email: jesattorney@gmail.com
PO Box 5248
Portland, OR 97208
Telephone: 503 944-2270
Facsimile: 971-275-1839

      Attorneys for Tracy Molina

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| AARON CANTU, JAMES MATTOX, and TRACY MOLINA, | Case No. 3:19-cv-1606 |
| Plaintiffs | COMPLAINT |
| v. | (Violations of Civil Rights: 42 U.S.C. § 1983; Negligence; Battery; Assault; False Arrest; and Intentional Infliction of Emotional Distress) |
| CITY OF PORTLAND, a municipal corporation, and JOHN DOES 1-20, Portland Police Bureau Officers and Supervisors, | **Jury Trial Demanded** |
| Defendants | |

Plaintiffs, by and through their attorneys, allege:

**NATURE OF ACTION**

1.

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and ORS 30.265 by

Aaron Cantu, James Mattox, and Tracy Molina (plaintiffs). Plaintiffs bring this civil rights action

because on August 4, 2018, the Portland Police Bureau ("PPB"), without provocation, attacked a

group of people who had gathered to express opposition to fascism. Defendants used unlawful,

excessive force against plaintiffs, shooting them with rubber bullets and aerial munitions, and

hitting them with batons. Plaintiffs were among the injured. Defendants chose to attack

plaintiffs' group in part because they disagreed with the political message of the anti-fascist

demonstrators and sympathized with the fascists. The acts and omissions of defendants violated

plaintiffs' rights under the First, Fourth, and Fourteenth Amendments to the United States

Constitution. As a result of defendants' acts and omissions, plaintiffs suffered economic and

noneconomic damages. Plaintiffs are entitled to damages and an award of attorneys' fees and costs.

## JURISDICTION AND VENUE

2.

This court has subject matter jurisdiction over plaintiffs' claims of violation of federal constitutional rights pursuant to 28 U.S.C. §§ 1331(a) and 1343 because the causes of action arise under 42 U.S.C. § 1983. This court has jurisdiction over plaintiffs' pendent state law claims under 28 U.S.C. § 1367.

3.

Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to plaintiffs' claims occurred in the District of Oregon and because defendants are subject to personal jurisdiction in the District of Oregon.

## TORT CLAIM NOTICE

4.

Prior to the institution of this action, each plaintiff provided notice of his or her claims to all necessary parties pursuant to ORS 30.275.

## PARTIES

5.

Plaintiff Aaron Cantu, at the time of filing and all material times, was a resident of Portland, Multnomah County, Oregon.

6.

Plaintiff James Mattox, at the time of filing and all material times, was a resident of Portland, Multnomah County, Oregon.

7.

Plaintiff Tracy Molina, at the time of filing and all material times, was a resident of Portland, Multnomah County, Oregon.

8.

Defendant City of Portland is a political subdivision of the State of Oregon. PPB is a department or division of the City. As a local governmental entity, the City of Portland is a suable person under 42 U.S.C. § 1983. At all material times, the City of Portland employed the John Doe defendants. At all material times, the John Doe defendants were acting pursuant to the City of Portland's laws, customs, and/or policies. Per ORS 30.285(1), the city must indemnify its officers for their tortious acts and is therefore liable for the purposes of this action by plaintiffs. On information and belief, the decision to indiscriminately use force against plaintiffs was made at a sufficiently high level as to be policy decision of the City of Portland.

9.

Plaintiff does not know the names of the John Doe defendants, and so is suing them under fictitious names.

10.

At all material times, defendants, John Does 1-11, were employed as law enforcement officers for PPB and were working under the color of state law. John Does 1-11 are PPB members who directly assaulted plaintiffs as described below. John Does 1-11 are sued in their individual capacity.

11.

At all material times, defendants, John Does 12-20, were employed as law enforcement officers for PPB and were working under the color of state law. John Does 12-20 were acting in a supervisory capacity at all material times. Their liability could include their own culpable action or inaction in the training, supervision, or control of their subordinates, their acquiescence in the constitutional deprivations alleged here, or in conduct showing a reckless or callous indifference to the rights of plaintiffs. They are sued in their individual capacity.

## GENERAL ALLEGATIONS

12.

Across the country, following the election of Donald Trump, far-right extremists have rallied for the causes of white supremacy, white nationalism, and xenophobia. Since its formation in 2016, the right-wing extremist group Patriot Prayer marked Portland as a target for protest. Patriot Prayer and its right-wing allies' strategy and intent for doing so was to a) intimidate counter-fascist groups; b) force a confrontation with counter-fascist groups; and c) utilize police departments and city governments into imposing harsh crowd control measures on counter-fascist groups.

13.

Patriot Prayer, under the leadership of Joey Gibson, has worked together with other right-wing groups, including the Proud Boys to organize a series of right-wing demonstrations in Portland. The summer of 2018 had been marked by confrontations between Patriot Prayer and groups who have organized to oppose fascism in Portland. In the year leading up to the August 4, 2018 event, PPB along with other law enforcement departments used their weapons, such as so-

called "Aerial Distraction Devices," bean bags, pepper balls, and flash-bang grenades, and

personnel to attack, detain, and scatter counter-fascist protestors. Often, these attacks by PPB on

counter-fascist protestors follow from little provocation on the part of the protestors.

14.

Gibson exploited these clashes as rhetoric in support of his 2018 senatorial bid in

neighboring Washington state. PPB leadership has a history of coordinating with Gibson and his

right-wing supporters to organize PPB for security at Patriot Prayer's events.[1]

15.

In the face of fascist rhetoric, counter-fascist groups in Portland and in other cities have

rallied to express their disapproval of Patriot Prayer's presence and message. On August 4, 2018,

plaintiffs attended the counter-fascist protest organized to oppose Patriot Prayer's rally.

Plaintiffs, like a great multitude of other Portlanders, felt that Patriot Prayer's hate speech had no

place in their city, and that they needed to stand in solidarity with the communities Patriot Prayer

intended to terrorize.

**I. The Scene**

16.

On August 4, 2018, Joey Gibson arrived in downtown Portland to hold a "Gibson for

Senate Freedom March," a rally in support of Gibson's campaign for a Washington state U.S.

Senate seat. Gibson had called for his members to arrive armed.[2] Gibson made clear prior to the

---

[1] Text Conversations, Portland Police Bureau, pg. 61,
https://www.portlandoregon.gov/police/article/712687
[2] Aaron Mesh, Katie Shepherd, Portland Braces for Street Clash as Proud Boys and Antifascists
Rally Their Troops for Waterfront Protests, Willamette Week (August 1, 2018),
https://www.wweek.com/news/courts/2018/08/01/portland-braces-for-street-clash-as-proud-boys-and-antifascists-
rally-their-troops-for-waterfront-protests/

August 4, 2018 event that he believed violence was inevitable.[3] Prior to the rally happening

Gibson had changed the venue from a federal park to the SW Waterfront at SW Naito Parkway.

This venue change allowed right-wing groups to openly carry weapons, including AR-15s, as

they had done at a rally in Washington the previous month.[4]

17.

Despite several orders by PPB to move into a designated park, Patriot Prayer members

refused to follow police orders. The refusal to obey PPB orders was motivated by Patriot

Prayer's leadership insisting to retain access to firearms. A text message sent by Gibson on

August 4, 2018 at 11:36 PST to PPB Lt. Niiya, Patriot Prayer's liaison in PPB, shows that

Gibson did not want to be disarmed when entering the fenced area of Tom McCall Park.[5] PPB

did not use their weapons against or try to detain Patriot Prayer for failing to obey their orders.

Instead, PPB allowed Gibson to flaunt his impunity, cross through the line of police officers on

SW Naito Parkway and confront counter-demonstrators.[6]

18.

On information and belief, during planned protests PPB sets up a "command center" to

house command staff, responsible for supervising PPB members' crowd control tactics. Either

Chief Danielle Outlaw or someone very close to the chief in rank directs the movements of PPB

members on the ground and directs how and when PPB members should use their crowd control

weapons. On information and belief, PPB's response to the events on August 4, 2018 was

---

[3] Katie Shepherd, Senate Candidate Joey Gibson Has Moved His Next Portland Protest to a Place Where Right-Wing Marchers Can Carry Guns, Willamette Week (July 27, 2018), https://www.wweek.com/news/2018/07/27/senate-candidate-joey-gibson-has-moved-his-next-portland-protest-to-a-place-where-right-wing-marchers-can-carry-guns/

[4] Id.

[5] Text Conversations, Portland Police Bureau, pg. 61, https://www.portlandoregon.gov/police/article/712687

[6] Joey Gibson, Freedom Rally Highlights, YouTube (August 6, 2018), https://youtu.be/CvM17_lT8i4

COMPLAINT

coordinated and supervised from such a command center. The individuals directing PPB's response are supervisors John Does 12-20.

19.

At approximately 2:00 pm, Gibson's rally marched southward in the Tom McCall Waterfront Park along SW Naito—again unimpeded by PPB.

20.

Plaintiffs moved south with a portion of the leftist-protest crowd toward Gibson's next location in Tom McCall Park. Others, like plaintiffs, gathered across the street from Gibson's right-wing rally, on SW Naito and SW Columbia St.

**II. Aaron Cantu**

21.

Mr. Cantu peacefully assembled on SW Naito Parkway along with the other counter-fascist protestors. Immediately, he found a heavy police presence trained primarily on the counter-fascist protestors. Aware that Gibson had called for his members to come armed and having heard of the violence perpetrated by Patriot Prayer members and PPB at past demonstrations, Mr. Cantu wore a bicycle helmet on his head.

22.

When Patriot Prayer marched southward in the Tom McCall Waterfront Park along SW Naito, Mr. Cantu moved with a portion of the counter-fascist protestors toward Patriot Prayer's next location. Mr. Cantu saw no projectiles thrown nor witnessed any violence from the people on the counter-fascist side and had no reason to believe that he was in danger at this location. Mr. Cantu did not hear any warnings about impending police operations or orders to disperse from PPB while at SW Columbia Street and SW Naito.

23.

Then, out of nowhere, Mr. Cantu heard a loud explosion. Mr. Cantu managed to move

halfway down the block between SW Naito and SW 1st Avenue on SW Columbia Street. When

he heard the first explosion, he immediately started running away. To the best of his recollection,

Mr. Cantu heard three or more explosions.

24.

While running away, Mr. Cantu was struck in the head with a projectile fired at him by

PPB. The projectile penetrated his helmet.



25.

As most of the clear video evidence exposes, PPB initiated their attack on the counter-fascist protestors following no provocation.[10] Videos also show that two PPB officers, John Does 1 and 2, fired explosives, identified in one report as Aerial Warning/Signaling Munitions (AW/SM), or known colloquially as "flash bangs," at an angle directed at the crowd in contravention to the standard use of such a weapon. Videos show that PPB officers took time to examine the crowd, load their weapons, and place their targets on the counter-fascist protestors.

26.

Reports suggest that PPB officers primarily fired into the crowd to retrieve police vehicles left unattended on SW Columbia Street.[11]

27.

Head bleeding, eyes blurry, unable to yell or speak, Mr. Cantu had to run through the intersection of SW Columbia Street and SW 1st Avenue, an intersection still open to vehicular traffic, to get away from the police launching explosives at the crowd. He sat down at a nearby bus stop. Attending street medics found Mr. Cantu bleeding and disoriented.

---

[10] Unicorn Riot (@UR_Ninja), Twitter (August 4, 2018, 2:41 pm)
https://twitter.com/UR_Ninja/status/1025859285727813632

[11] Katie Shepherd, Dispatch Records Show Portland Police Fired Flash-Bangs at Crowd to Recover Police Cruisers, Willamette Week (October 23, 2018), https://www.wweek.com/news/courts/2018/10/23/dispatch-records-show-police-fired-flash-bangs-at-crowd-to-recover-police-cruisers/



28.

PPB officers continued to assault the counter-fascist protestors down SW Columbia Street, continuing to fire at the fleeing protestors blocks away. While Mr. Cantu sat at the bus stop and was attended to by a local street medic, PPB continued to fire projectiles in his direction. The medics had to move him away from this continuously dangerous situation.

29.

Eventually, a medic got Mr. Cantu to a hospital. Mr. Cantu had suffered a traumatic brain injury, likely one that would have been fatal had he not been wearing a bike helmet. The injury caused hemorrhaging, and the following five centimeter complex wound to his head:



30.

In addition to the financial costs of having his grievous head wound treated, Mr. Cantu still suffers from the physical and emotional pain of having been subjected to extreme police violence. Currently, Mr. Cantu suffers from dizziness and tinnitus. Closer in time to the incident, Mr. Cantu suffered from more pronounced dizziness, tinnitus, difficulty with cognitive tasks, and emotional trauma. Mr. Cantu works as a field engineer and missed a week of work following this incident.

## II. Tracy Molina

31.

Ms. Molina joined the demonstrations to protest Patriot Prayer's presence and ideology

on August 4, 2018 because she, like hundreds of other counter-protestors, believed in taking a

stand against the hateful ideology and violent acts that groups like Patriot Prayer represent and

propagate. She had a protest sign which read, "Hey Racists Stop Making Your Ignorance Our

Problem Grow Up or Go Home." When PPB took to dispersing the counter-fascist protestors,

Ms. Molina feared that Patriot Prayer and Proud Boys members were also pursuing the counter-

fascist protestors.

32.

Chaos followed PPB's firing of explosives into the crowd assembled on SW Columbia.

Many people, like Ms. Molina, were closer to SW 1st Avenue than SW Naito and could not see

PPB's initial launch of explosives into the crowd.

33.

As Ms. Molina was complying with PPB's orders to move along the sidewalk, a PPB

officer, John Doe 3, suddenly grabbed her protest sign from behind. Surprised, Ms. Molina

turned around to hold on to her sign. An officer then knocked her to the ground with such force

that she fell and rolled into the middle of the street, where a large group of officers, John Does 4-

10, dog-piled her in a tackle and arrested her.

34.

Ms. Molina was charged with Attempt to Commit a Class C/Unclassified Felony

(Misdemeanor Class A), Disorderly Conduct in the Second Degree (Misdemeanor Class B), and

Interfering w/ Peace/Parole and Probation Officer (Misdemeanor Class A). Ms. Molina plead "Not Guilty" and the case was dismissed in her favor.

35.

Ms. Molina suffered physically and emotionally from the violence she endured at the hands of PPB officers.

**III. James Mattox**

36.

On August 4, 2018 Mr. Mattox peacefully assembled on SW Naito Parkway, along with other counter-fascist protestors. Mr. Mattox wore a motorcycle helmet with a visor and bandana over his face and carried a black shield with a white anarchist "A."

37.

Mr. Mattox sat down in the shade, on the curb, and waited at SW Columbia Street and SW Naito. Plaintiff had seen no projectiles thrown nor witnessed any violence from the people on the counter-fascist side and had no reason to believe that he was in danger at this location. The PPB officers positioned on SW Naito were mostly facing the crowd of counter-fascist protestors, with their backs turned to Gibson's supporters. Mr. Mattox heard no warning about impending police operations, projectiles thrown at officers, or orders to disperse from PPB while he was sitting in the location at SW Columbia and SW Naito Pkwy.

38.

All of a sudden, Mr. Mattox heard two loud explosions. The crowd of counter-fascist protestors started running and Mr. Mattox moved with the crowd west up SW Columbia Street. PPB members in riot gear assailed the counter-protestors and Mr. Mattox down SW Columbia, continuing to fire on the fleeing protestors blocks away.

39.

Officer John Doe 11 was one of the PPB members moving the crowd west on Columbia.

Officer Doe 11 was operating a "less lethal" gun, equipped to fire rubber projectiles. Officer Doe

11 aimed his less lethal gun at Mr. Mattox even though Mr. Mattox posed no threat of violence

and was not fleeing or resisting arrest. At the time Mr. Mattox was shot he was moving

backwards in the same direction as the rest of the fleeing counter-protestors, while waving his

arms and his anarchist shield, flipping off the officers, and shouting profanities. Officer Doe 11

took aim and fired his gun at Mr. Mattox, hitting Mr. Mattox with a rubber bullet in the upper

left thigh area. The rubber bullet fell to the ground.



Mr. Mattox picked up the bullet and held it up in the air, shouting "Look you missed!" followed

by profanities. Mr. Mattox then saw Officer Doe 11 aiming his weapon and firing at him a

second time.

40.

Officer Doe 11 hit Mr. Mattox in his right arm, the arm holding the rubber bullet, causing

Mr. Mattox intense pain and shock. As a result of being shot by Officer Doe 11, Mr. Mattox

sustained a large gash in his right arm, which immediately started bleeding. Mr. Mattox moved

to the sidewalk area and yelled for a medic to help him. People came to his aid. In a few minutes,

Andrea Chiavarini, a doctor who was volunteering at the protest, came upon Mr. Mattox

bleeding on the sidewalk and administered emergency care to Mr. Mattox in the back of her car.



41.

Following this incident Mr. Mattox went to urgent care for follow up treatment. He

suffered sharp pain, insomnia, and limitations in functioning and movement for weeks. Mr.

Mattox was unable to return to work for over a week due to the seriousness of his injury.



42.

In addition to the financial costs of having his injuries treated and missing work, Mr.

Mattox suffered from the physical and emotional pain of having been subjected to extreme police

violence. Mr. Mattox experienced depression and the lasting effects of trauma from extreme

police violence. Due to the trauma of being seriously injured by police at a protest, Mr. Mattox

has almost entirely stopped engaging in protest activities since this incident.


**FIRST CLAIM FOR RELIEF**
**(Excessive Force – Violation of Fourth and Fourteenth Amendments)**

43.

**Count 1: Individual Liability of John Does 1-11**

As alleged above, defendants John Doe 1-11's use of force was objectively unreasonable under

the circumstances, constituted excessive force, and was an unreasonable, and unjustifiable use of

deadly force in the cases of Mr. Mattox and Mr. Cantu.

44.

**Count 2: Individual Liability of John Does 12-20**

As alleged above, defendants John Doe 12-20 directed the objectively unreasonable use of force

perpetrated by John Does 1-11 and are therefore individually liable.

45.

**Count 3: Municipal Liability – Custom and Practice of Excessive Force Against Protestors**

The City of Portland has a custom and practice of using militarized force against protestors.

Given the repeated extreme uses of force against protestors, it has become the norm to expect

this level of violence from PPB. PPB's custom and practice is to use force indiscriminately

against crowds of protestors with little to no provocation. When force is used, PPB makes no

effort to limit its force to individuals who actually pose a threat of violence, instead using force

indiscriminately at anyone who happens to be in the crowd.

46.

**Count 4: Municipal Liability – Action of Policymaking Officials**

The decision to fire explosives at the heads of protestors, and use rubber bullets on fleeing,

nonviolent protestors in this case was made by PPB officials John Does 12-20, who are

sufficiently senior that the decision may fairly be said to represent official policy of the City of

Portland.

## SECOND CLAIM OF RELIEF
### (Assault, Battery, and Negligence – State Law Claim)
### (Against the City of Portland)

47.

**Count 5: Assault**

Officer Doe 11 committed an assault upon Mr. Mattox by intentionally attempting to cause harmful physical contact with the plaintiff by aiming and firing rubber bullets at Mr. Mattox. Officer Doe 1 or 2 committed an assault upon Mr. Cantu by intentionally attempting to cause harmful physical contact with the plaintiff by firing an aerial distraction device at the crowd of counterdemonstrators. Officer Does 3-10 committed an assault upon Ms. Molina by intentionally attempting to cause harmful physical contact with Ms. Molina by grabbing her sign, pushing her to the ground, and dog-pile tackling her in the street. Officers Doe had the then-present ability to carry out the assaults, as detailed above.

48.

**Count 6: Battery**

Officers Doe 11 committed a battery against Mr. Mattox because Officers Doe 11 had an intent to cause harmful physical contact with plaintiff and did cause harmful physical contact by Officer Doe 11's intentional act of firing rubber bullets at Mr. Mattox. Officer Doe 1 or 2 committed a battery against Mr. Cantu because Officer Doe had an intent to cause harmful physical contact with Mr. Cantu and did cause harmful physical contact by Officer Doe's intentional act of firing aerial distraction devices directly at the crowd of counter-fascist protestors, striking Mr. Cantu in the skull. Officers Doe 3-10 committed a battery against Ms. Molina because Officers Doe had an intent to cause harmful physical contact with her and did cause harmful physical contact when Officer Doe 3 grabbed Ms. Molina's protest sign and

pushed her to the ground and when Officer Does 4-10 dog-pile tackled Ms. Molina on the street pavement.

49.

**Count 7: Negligence**

Given the repeated extreme uses of force against protestors, it has become the norm to expect this level of violence from PPB. Without adequate training, supervision, or review of PPB's officers, defendant City of Portland has created an environment of militarized responses to mild forms of dissent. Additionally, by firing their lethal weapons directly into a passive crowd on August 4, 2018, agents of City of Portland created an unnecessary and unreasonable risk of harm against all present. City of Portland prioritized the safety of their vehicle, and Patriot Prayer's ability to freely move, over plaintiffs' lives, safety, and liberties. It was foreseeable that plaintiffs would be injured in the way they were. Despite knowledge of this risk, and the foreseeability of this injury, City of Portland breached their duty owed to plaintiffs, damaging them.

50.

**Count 8: Intentional Infliction of Emotional Distress**

As described above, the agents and employees of the City of Portland intentionally and/or with reckless disregard inflicted severe emotional distress on plaintiffs.

51.

As described above, the agents and employees of City of Portland's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.

52.

As a result of their outrageous behavior, plaintiffs were harmed physically and emotionally by their behavior.

53.

**Count 9: False Arrest**

As described above, City of Portland intentionally and unlawfully restrained Ms. Molina's freedom of movement, causing her arrest and subsequent harm.

### THIRD CLAIM OF RELIEF
### (Retaliation - Violation of the First Amendment)

54.

**Count 7: Individual Liability of John Does 1-20 – First Amendment**

Defendants John Does used deadly force against Mr. Mattox and Cantu in retaliation for their protected speech and with the intent to chill their speech. Officer Doe 11 shot Mr. Mattox because of and in retaliation to the plaintiff engaging in speech that John Doe 11 did not condone, namely plaintiff dancing with an Anarchist sign, while flipping the officer off, and shouting profanities. As was made clear by the conduct of PPB officers throughout the day on August 4, 2018, and as revealed in text messages between PPB and Joey Gibson, defendants preferred the speech rights of Mr. Gibson and the right-wing protestors over those of the counter-fascist protestors. Officer John Doe 11's retaliatory motive was the but-for cause of Mr. Mattox's injuries. By shooting Mr. Mattox Officer Doe 11 in fact chilled Mr. Mattox's political speech.

55.

Officer John Does 1 and 2 used deadly force on the crowd of counter-protestors when they shot aerial distraction devices at the crowd, rather than over the crowd or not at all, striking Mr. Cantu, a counterdemonstrator, in the skull. As detailed above, defendants preferred the

speech rights of Mr. Gibson and his followers over the speech rights of the counter-fascist protestors. Officer John Doe's retaliatory motive was the but-for cause of Mr. Cantu's injuries. By shooting Mr. Cantu the defendant in fact chilled Mr. Cantu's political speech.

56.

Officer John Doe 3 grabbed Ms. Molina's protest sign, then pushed her to the ground, and other officers proceeded to dog-pile tackle Ms. Molina. Defendants preferred the speech rights of Mr. Gibson over those of the counter-protestors. Officer John Does' retaliatory motive was the but-for cause of Ms. Molina's injuries. By attacking Ms. Molina the defendants in fact chilled her political speech.

57.

John Does 12-20 made the supervisory decision to direct the PPB attack on anti-fascist protestors rather than fascist protestors at least in part because they sympathized with the fascists and disagreed with the anti-fascists.

**Count 9: Municipal Liability – First Amendment**

58.

The City of Portland has a custom and practice of using militarized force against left-wing or counter-fascist protestors. The defendants' use of force was intended to punish a group of protestors *en masse* for their political speech. The City of Portland does not use such force against right-wing protestors or fascist protestors, such as the Proud Boys or Patriot Prayer, despite their disobedience of officers' orders. The supervisory decision to fire "Aerial Distraction Devices" into a crowd, push and tackle protestors, and aim and fire rubber bullets at fleeing counter-fascist protestors was made in retaliation for the protestors' protected speech.

59.

The supervisor defendants who made the decision to attack anti-fascist demonstrators are sufficiently senior so that their decision can fairly be said to be the official policy of the City of Portland.

**FOURTH CLAIM OF RELIEF**
**(Violations of the Oregon Constitution)**
**(Against the City of Portland)**

60.

The defendant City has a policy and/or a custom and practice of using lethal and unlawful force to suppress speech in violation of Oregon Constitution Art. I, §§ 8 and 9, which respectively protects Oregonians from "restrain[ts of] free expression of opinion" and "unreasonable searches and seizures." Plaintiffs are entitled to declaratory relief, declaring that the City's policy and/or custom and practice violates the Oregon Constitution Art. I, §§ 8 and 9. Plaintiffs are also entitled to injunctive relief enjoining defendant and its successors to cease this policy and/or custom and practice.

**DAMAGES**

61.

As a direct and proximate result of the conduct of the defendants, Mr. Mattox has sustained emotional distress, including, but not limited to, pain and suffering, depression, loss of self-esteem, a fear of trusting those in positions of power, a fear of trusting law enforcement, paranoia, anxiety, and sleeplessness. He missed a week of work due to his injury. His arm remains permanently disfigured by scarring.

62.

As a direct and proximate result of the conduct of the defendants, Mr. Cantu suffered both economic and non-economic damages. Mr. Cantu still suffers from the physical and emotional pain of having been subjected to extreme police violence. Currently, Mr. Cantu suffers from dizziness and tinnitus. Closer in time to the incident, Mr. Cantu suffered from more pronounced dizziness, tinnitus, difficulty with cognitive tasks, and emotional trauma. Certain loud sounds would trigger post-traumatic responses that bear a heavy emotional cost on him. Mr. Cantu has sustained emotional distress, including, but not limited to, pain and suffering, discomfort, fear, frustration, a fear of trusting those in positions of power, and anxiety. Mr. Cantu works as a field engineer and missed a week of work following this incident.

63.

As a direct and proximate result of the conduct of the defendants, Ms. Molina suffered emotional distress, discomfort, fear, frustration, and humiliation, including attendant physical symptoms of emotional distress. Ms. Molina lost time and liberty from her arrest and subsequent criminal prosecution. Being pushed to the ground and tackled by Officers Does was physically painful.

64.

As a direct and proximate result of the conduct of defendants, plaintiffs have incurred medical expenses and lost wages. Plaintiffs' economic damages are in an amount to be proven at trial.

**DEMAND FOR JURY TRIAL**

For all claims alleged in this Complaint, plaintiffs demand a jury trial.

## REASONABLE ATTORNEY'S FEES AND COSTS

42 U.S.C. § 1988(b) allows "the prevailing party . . . a reasonable attorney's fee as part of the costs. . ." in an action brought under 42 U.S.C. § 1983.

Plaintiffs requests that the court grant reasonable attorneys' fees in this action.

## CONCLUSION

**WHEREFORE**, plaintiffs pray for their costs and disbursements incurred herein and for the following in accordance with the proof at trial:

1.    Economic damages;

2.    Non-economic damages;

3.    Attorney's fees;

4.    Declaratory relief in relation to Claim 4;

5.    Injunctive relief in relation to Claim 4; and

6.    Any other relief the court deems proper.

**DATED** this 7th day of October 2019

/s/ *Viktoria Safarian*
**Viktoria Safarian**, OSB No. 175487
Email: viktoria@lmhlegal.com
**Jesse Merrithew**, OSB No. 074564
Email: jesse@lmhlegal.com
Levi Merrithew Horst PC
610 SW Alder Street, Suite 415
Portland, OR 97205
Telephone: (971) 229-1241
Facsimile:  (971) 544-7092

/s/ *Juan C. Chavez*
**Juan C. Chavez**, OSB #136428
jchavez@ojrc.info
**Alex Meggitt**, OSB # 174131
alex.meggitt@gmail.com

**Brittney Plesser**, OSB #154030
bplesser@ojrc.info
Oregon Justice Resource Center
(503) 944-2270

**John Schlosser,** OSB # 104959
Email: jesattorney@gmail.com
PO Box 5248
Portland, OR 97208
Telephone: 503 944-2270
Facsimile: 971-275-1839

COMPLAINT