IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| AARON CANTU, JAMES MATTOX, and TRACY MOLINA, | Case No. 3:19-cv-01606-SB |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| CITY OF PORTLAND, a municipal corporation, and JOHN DOES 1-20, Portland Police Bureau Officers and Supervisors, | |
| Defendants. | |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiffs Aaron Cantu ("Cantu") and Tracy Molina ("Molina") (together, "Plaintiffs"),[1] filed this action against the City of Portland ("the City"), John Does 1-11, who are Portland Police Bureau ("PPB") law enforcement officers ("PPB Officers"), and John Does 12-20, who are PPB law enforcement officers working in a supervisory capacity ("PPB Supervising Officers") (collectively, "Defendants"). Plaintiffs bring claims under 42 U.S.C. § 1983 ("Section

---

[1] Plaintiff James Mattox settled and dismissed his claims after the parties briefed this motion (*see* ECF No. 42), and therefore the Court does not address his allegations or claims herein.

PAGE 1 – OPINION AND ORDER

1983"), OR. REV. STAT. § 30.265, OR. CONST. ART. I, SECTS. 8 AND 9, and Oregon common law, alleging that Defendants used unlawful force against them during a protest in downtown Portland, Oregon, on August 4, 2018 ("the Protest").

Currently before the Court is Defendants' motion to dismiss, seeking dismissal of Plaintiffs' Fourth Amendment *Monell* claims (Counts 3 and 4) (Mot. to Dismiss at 3-9), and Plaintiffs' First Amendment claims (Counts 10 and 11). (*Id.* at 13.) In the alternative, Defendants seek a more definite statement of Plaintiffs' claims (*Id.* at 16-17), and move to strike various allegations. (*Id.* at 16; Reply at 6-7.) All parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636. For the reasons explained below, the Court denies Defendants' motion.

## BACKGROUND[2]

Cantu and Molina attended the Protest as counter protestors opposing Patriot Prayer, an organization of "far-right extremists" who "rall[y] for the causes of white supremacy, white nationalism, and xenophobia." (Compl. ¶ 12.) The leader of Patriot Prayer, Joey Gibson ("Gibson"), began the Protest at S.W. Naito Parkway ("Naito"), and the rally moved southward along Naito. (*Id.* ¶¶ 16, 19.) Patriot Prayer members carried weapons, including AR-15 style rifles. (*Id.* ¶ 16.)

PPB sent officers to the Protest and set up a "command center" close to the Protest where the Supervising Officers instructed the PPB Officers' responses. (*Id.* ¶ 18.) Although Plaintiffs

---

[2] The Court takes these facts from Plaintiffs' complaint and assumes that they are true for the purpose of reviewing the pending motion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) ("[When] ruling on a defendant's motion to dismiss a complaint [the court] 'must accept as true all of the factual allegations contained in the complaint'") (citation omitted)); *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) ("With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party.") (citation omitted).

PAGE 2 – OPINION AND ORDER

and other counter protestors were peacefully assembling, the Protest turned violent when a loud explosion occurred. (*Id.* ¶ 23.) Protestors started running. (*Id.*) The PPB Officers fired projectiles, including "Aerial Distraction Devices" ("ADDs"), into the crowd of protestors, despite no provocation. (*Id.* ¶ 25.) The PPB Officers purposefully aimed these projectiles at the protestors. (*Id.*) Plaintiffs allege that this excessive use of force is part of the City's "custom and practice of using militarized force against protestors." (*Id.* ¶ 45.) Plaintiffs allege that the Supervising Officers, who are sufficiently senior to be policymaking officials, made the decision to fire projectiles at protestors. (*Id.* ¶ 46.)

### A. Cantu

Cantu followed Patriot Prayer with the rest of the counter protestors as Patriot Prayer moved south along Naito in the Tom McCall Waterfront Park. (*Id.* ¶ 22.) After he heard an explosion, Cantu began running in the opposite direction of the Protest. (*Id.* ¶ 23.) While Cantu was running, a PPB officer fired and struck Cantu with a projectile. (*Id.* ¶ 24.) Cantu wore a bicycle helmet to protect his head, but the projectile penetrated his helmet, causing hemorrhaging and a five-centimeter wound to his head. (*Id.* ¶ 29.) Cantu suffered a traumatic brain injury and missed a week of work following the incident. (*Id.* ¶¶ 29-30.) As a result, he suffered from pronounced dizziness, tinnitus, difficulty with cognitive tasks, and emotional trauma. (*Id.* ¶ 30.) Cantu continues to suffer from "physical and emotional pain" from the incident. (*Id.*)

### B. Molina

Molina also attended the Protest as a counter protestor. (*Id.* ¶ 31.) While Molina was complying with instructions to move along the sidewalk following the explosion, a PPB officer (Officer Doe 3) grabbed her sign. (*Id.* ¶¶ 31, 33.) Another PPB officer knocked her to the ground, and Officer Does 4-10 tackled and arrested her, resulting in physical and emotional harm to Molina. (*Id.* ¶ 33.) Molina was charged with two Class A misdemeanors and a Class B

PAGE 3 – OPINION AND ORDER

misdemeanor, which were ultimately dismissed. (*Id.* ¶ 34.) Molina alleges that she suffered from "emotional distress, discomfort, fear, frustration, and humiliation, including attendant physical symptoms of emotional distress." (*Id.* ¶ 63.)

## ANALYSIS

### I. STANDARDS OF REVIEW

#### A. Motion to Dismiss

A party may move to dismiss a complaint based on the failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(B)(6). "Dismissal for failure to state a claim is proper only when it appears to a certainty that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief." *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) (citing *Rae v. Union Bank*, 725 F.2d 478, 479 (9th Cir. 1984)). In other words, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

///

///

PAGE 4 – OPINION AND ORDER

B.  **Motion to Strike**

Under FED. R. CIV. P. 12(f), "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." "A matter is immaterial if it has no essential or important relationship to the claim for relief or the defenses being pleaded." *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 271 (N.D. Cal. 2015) (citation and quotation marks omitted). "Scandalous matters are allegations 'that unnecessarily reflect[] on the moral character of an individual or state[] anything in repulsive language that detracts from the dignity of the court,' and 'include[] allegations that cast a cruelly derogatory light on a party or other person.'" *Consumer Sols. REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1020 (N.D. Cal. 2009) (alteration in original) (citation omitted). A court may strike an allegation as scandalous if the matter bears no possible relation to the controversy or may cause the objecting party prejudice. *See Sirois v. E. W. Partners, Inc.*, 285 F. Supp. 3d 1152, 1162 (D. Haw. 2018) (denying motion to strike because the allegation was directly related to the plaintiff's claim).

C.  **Motion for More Definite Statement**

FED. R. CIV. P. 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." "Motions for a more a definite statement are disfavored and are proper only where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted." *Ramos v. U.S. Bank Nat'l Ass'n*, No. 08-CV-1150-PK, 2009 WL 1475023, at *7 (D. Or. May 20, 2009) (citation and quotation marks omitted). "The Court must deny the motion if the complaint is specific enough to notify defendant of the substance of the claim being asserted." *C.B. v. Sonora Sch. Dist.*, 691 F. Supp. 2d 1170, 1191 (E.D. Cal. 2010).

///

PAGE 5 – OPINION AND ORDER

## II.    DISCUSSION

### A.    Section 1983 Claims

#### 1.    Legal Standards

Section 1983 provides a private right of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "'To state a claim under [Section] 1983, a plaintiff [1] must allege the violation of a right secured by the Constitution and laws of the United States, and [2] must show that the alleged deprivation was committed by a person acting under color of state law.'" *Naffe v. Frye*, 789 F.3d 1030, 1035-36 (9th Cir. 2015) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Avenues for liability under Section 1983 include municipal (or "*Monell*") liability and individual liability. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978) (municipal liability); *Hafer v. Melo*, 502 U.S. 21, 31 (1991) (individual liability).

##### a.    *Monell* Liability

To establish *Monell* liability, Plaintiffs must allege that: (1) they were deprived of a constitutional right; (2) the municipality had a policy, custom, or practice; (3) the policy, custom, or practice amounted to deliberate indifference of the plaintiffs' constitutional rights; and (4) the policy, custom, or practice was the "moving force" behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citation omitted).

A plaintiff may establish that the policy, custom, or practice was the cause of injury in three ways: (1) "a city employee committed the alleged constitutional violation pursuant to [either] a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity"; (2) "the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy"; or (3) "an

PAGE 6 – OPINION AND ORDER

official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (citations and quotation marks omitted).

### b. Individual Liability

To establish individual liability under Section 1983, an individual must personally participate in the alleged deprivation of the right. *See Avalos v. Baca*, 596 F.3d 583, 587 (9th Cir. 2010) (providing that, to recover under Section 1983, the plaintiff must either demonstrate that the defendant personally participated in the alleged deprivation of right or that the deprivation "was the result of a pattern or custom").

### 2. Fourth Amendment *Monell* Claims

Defendants move to dismiss Plaintiffs' Fourth Amendment *Monell* claims that are premised on Defendants acting pursuant to a custom or practice of using excessive force (Count 3), and premised on policymaking officials (the Supervising Officers) making the decision to use force (Count 4). (Mot. to Dismiss at 3-9.)

### a. Count 3 (Custom and Practice of Excessive Force Against Protestors)

Defendants argue that Plaintiffs' *Monell* claim based on a custom or practice of using excessive force (Count 3) fails to state a plausible claim for relief because the complaint does not allege facts to support a longstanding custom or practice, does not allege that Defendants used excessive force consistent with the alleged custom or practice, and does not plead causation. (Motion to Dismiss at 5-7; Reply at 6.)

As a general rule, "[t]here is no heightened pleading standard in the Federal Rules of Civil Procedure with respect to the 'policy or custom' requirement of demonstrating municipal liability." *Martin v. City of Portland*, No. 3:19-CV-1647-SI, 2020 WL 363391, at *5 (D. Or. Jan.

PAGE 7 – OPINION AND ORDER

21, 2020). However, a complaint must "contain sufficient factual allegations to plausibly suggest a policy or custom, as opposed to merely random, unconnected acts of misconduct . . . ." *Estate of Osuna v. Cty. of Stanislaus*, 392 F. Supp. 3d 1162, 1174 (E.D. Cal. 2019); *see also Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (holding that a custom or practice claim cannot be based "on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy"). The complaint need only allege "the policy or custom itself . . . in general terms[,]" as "[i]t is a rare plaintiff who will have access to the precise contours of a policy or custom prior to having engaged in discovery, and requiring a plaintiff to plead its existence in detail is likely to be no more than an exercise in educated guesswork." *Estate of Osuna*, 392 F. Supp. 3d at 1174-75 (citations omitted). There is no bright line rule as to "'the quantum of allegations needed to survive a motion to dismiss a pattern and practice claim,'" however, "'where more than a few incidents are alleged, the determination appears to require a fully-developed factual record.'" *Id.* at 1173 (citations omitted).

   The Court finds that Plaintiffs have adequately alleged that PPB has a custom or practice of using excessive force at protests. Plaintiffs allege the specific tactics that the PPB Officers used against protestors during the Protest, and that they used force with little provocation. *See* Compl. ¶ 13 (alleging that "PPB along with other law enforcement departments used their weapons, such as so-called '[ADDs],' bean bags, pepper balls, and flash-bang grenades, and personnel to attack, detain, and scatter counter-fascist protestors" and that these "attacks by PPB" on protestors followed "little provocation on the part of the protestors"); *see also* Compl. ¶ 45 (alleging that PPB's custom and practice of excessive force involved "using militarized force against protestors," and a "custom and practice" of "us[ing] force indiscriminately against

PAGE 8 – OPINION AND ORDER

crowds of protestors with little to no provocation"). Plaintiffs further allege that PPB used the same tactics and force in the year leading up to the Protest, citing a series of confrontations between Patriot Prayer and counter protestors during the summer of 2018. *See* Compl. ¶ 13 (alleging that the "summer of 2018 had been marked by confrontations between Patriot Prayer and groups who have organized to oppose fascism in Portland[,]" and that PPB used these tactics and force "in the year leading up to the [Protest]"). Although Plaintiffs do not cite to dates of specific events, Plaintiffs allege a general time period and description of related protests which the Court finds to be sufficient at the pleading stage. *See Martin*, 2020 WL 363391, at *5-6 (distinguishing the requirements to survive a motion to dismiss and to establish liability).[3]

Based on these factual allegations, the Court finds that the complaint sufficiently places Defendants on notice of PPB's alleged custom or practice of using excessive force at protests. *See Estate of Osuna*, 392 F. Supp. 3d at 1175) (denying motion to dismiss *Monell* claim because the complaint "identified multiple prior instances of alleged misconduct" and "allege[d] that these actions occurred due to either a lack of training, or a policy of employing excessive and unreasonable force[,]" even though the descriptions of the policies were "not particularly detailed"); *see also Martin*, 2020 WL 363391, at *5-6 (denying the City's motion to dismiss *Monell* claim because the plaintiff adequately alleged "that the City ha[d] a history of using unconstitutional force on people experiencing mental health crises sufficient to constitute a custom or practice" where the complaint alleged that the City had such a custom or practice, that

---

[3] Defendants argue in their reply that Plaintiffs cannot prove excessive force because their allegations are implausible in light of prior decisions holding that the City did not use excessive force at protests. (Reply at 4-5.) Even if there are court decisions ruling on the merits on PPB's alleged use of excessive force at every Portland protest during the relevant time period, the Court could not conclude that those cases addressed every protestor's experience at every Portland protest during the relevant time period.

PAGE 9 – OPINION AND ORDER

PPB had a history of employing unconstitutional excessive force in confrontations with mentally ill people, that PPB did not adequately remedy the problem, and that an officer used excessive force when he killed the plaintiff).

Defendants also argue that Plaintiffs have not pled any actions that Defendants took pursuant to the alleged practice or custom. (Mot. to Dismiss at 5.) Plaintiffs "must show that a 'policy or custom' led to the plaintiff's injury." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016) (citing *Monell*, 436 U.S. at 694). Here, Plaintiffs allege that PPB had a custom or practice of using excessive force at protests, PPB officers used excessive force consistent with the custom or practice, and the PPB officers' use of excessive force injured Cantu. *See* Compl. ¶¶ 24-30 (describing Cantu's injuries). Accepting Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, the Court finds that Plaintiffs have adequately stated a *Monell* claim under the first theory of liability (Count 3), and therefore denies Defendants' motion to dismiss on this ground.

### b. Count 4 (Action of Policymaking Officials)

Defendants also move to dismiss Plaintiffs' *Monell* claim that is based on allegations that the Supervising Officers made the decision to fire on the protestors. (Compl. ¶ 46.) Defendants argue that Plaintiffs' specific allegation that the Supervising Officers authorized firing projectiles at the protestors' heads does not match up precisely with Plaintiffs' allegations that the PPB Officers fired into the crowd. (Mot. to Dismiss at 8.) The Court finds that the complaint is sufficiently clear that Plaintiffs are alleging that the Supervising Officers authorized the PPB Officers to fire on the crowd, and they did, leading to the alleged constitutional injury. *See Nelson v. City of Davis*, 685 F.3d 867, 877 (9th Cir. 2012) ("Whether the officers intended to subject the students to a shower of pepper spray via area contamination or intended to hit them with the pepperball projectiles themselves, the officers intentionally directed their use of force at

PAGE 10 – OPINION AND ORDER

the students."); *Marbet v. City of Portland*, No. CV 02-1448-HA, 2003 WL 23540258, at *10 (D. Or. Sept. 8, 2003) (denying motion to dismiss Fourth Amendment claim because the plaintiffs' allegations that the "defendants intentionally applied pepper spray and shot rubber bullets at plaintiffs who were engaged in lawful protest activities" were facts, if proven, that "would establish that [the] defendants intentionally restrained [the] plaintiffs' freedom of movement").

Defendants also argue that Plaintiffs fail to plead that the Supervising Officers are officials with "final policy making authority." (Mot. to Dismiss at 9.) "To hold a local government body liable for an official's conduct, a plaintiff must first establish that the official (1) had final policymaking authority concerning the action . . . at issue; and (2) was the policymaker for the local governing body for the purposes of the particular act.'" *Goldstein v. City of Long Beach*, 715 F.3d 750, 753 (9th Cir. 2013) (alteration in original) (citation omitted). "Whether an official is a policymaker for *Monell* purposes is a question governed by state law." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988)); *see also City of St. Louis*, 485 U.S. at 125 ("[S]tate law (which may include valid local ordinances and regulations) will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business.").

Here, Plaintiffs allege that the Supervising Officers calling the shots from the command center included either the Chief of Police, or deputies with similar authority. *See* Compl. ¶ 8; *see also* Compl. ¶ 18 ("Either Chief Danielle Outlaw[,] or someone very close to the chief in rank[,] directs the movements of PPB members on the ground and directs how and when PPB members should use their crowd control weapons.") Under Oregon law, the Chief of Police is a final policymaker. *See Wimett v. Sothern*, No. 3:12-CV-01406-MO, 2014 WL 4059768, at *16 (D. Or.

PAGE 11 – OPINION AND ORDER

Aug. 14, 2014) (finding that "the Chief is the final policymaking authority with regard to the rules governing police officer conduct"). Deputy chiefs may also be policymakers. *See* Charter of the City of Portland, § 3.20.050 ("The Deputy Chiefs, Captains and other ranks or grades of police within the Bureau of Police shall possess like power and authority as the Chief of Police with respect to peace officer powers, except as herein provided."). Thus, Plaintiffs have adequately alleged that a policymaking official or officials made the decision to fire on the protestors. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (holding that under *Monell*, if a "government's authorized decisionmakers" make "the decision to adopt [a] particular course of action," "it surely represents an act of official government 'policy'" and "where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly").

The Court finds that Plaintiffs adequately allege *Monell* liability based on the alleged actions of policymaking officials, and accordingly denies Defendants' motion to dismiss Plaintiffs' *Monell* claim (Count 4) on this ground.

### c. "Militarized Force" and "Indiscriminate Force"

Defendants also move to dismiss or, in the alternative, to strike Plaintiffs' Fourth Amendment *Monell* claims to the extent they rely on allegations of "militarized force" and "indiscriminate force." (Reply at 6.) Defendants assert that those terms are "provocative," "immaterial to the establishment of Fourth Amendment municipal liability[,]" and not the legal equivalent of "excessive force." (*Id*.)

Plaintiffs do not plead an independent claim that the City had a custom or practice of using militarized or indiscriminate force. Rather, Plaintiffs use those phrases to describe in more detail their allegations of a pattern of "excessive force." (*See* Compl. ¶ 45.) It is of no moment that "militarized force" or "indiscriminate force" are not the legal equivalent of "excessive

PAGE 12 – OPINION AND ORDER

force," and Plaintiffs' use of additional descriptors to describe the type of force Defendants allegedly used does not confuse the issues. *See Campbell v. Feld Entm't Inc.*, Nos. 12-CV-4233-LHK, 13-CV-0233-LHK, 2014 WL 1366581, at *5 (N.D. Cal. Apr. 7, 2014) (holding that where there is "any doubt whether the portion to be stricken might bear on an issue in the litigation, the [C]ourt should deny the motion" (citing *Platte Anchor Bolt, Inc.*, 352 F. Supp. 2d at 1057) (internal citations omitted)); *see also Nelson*, 685 F.3d at 886 ("[F]iring projectiles, including pepperballs, in the direction of individuals suspected of, at most, minor crimes, who posed no threat to the officers or others, and who engaged in only passive resistance, [is] unreasonable." (citing *Deorle v. Rutherford*, 272 F.3d 1272, 1284-95 (9th Cir. 2001))).

Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' *Monell* claims to the extent they rely on allegations of "militarized force" and "indiscriminate force," and denies Defendants' motion to strike those phrases from the complaint.[4]

### 3. First Amendment Claims

Defendants move to dismiss Plaintiffs' First Amendment claims on the ground that Plaintiffs do not sufficiently allege viewpoint discrimination. (Mot. to Dismiss at 15.)

To plead a First Amendment claim, Plaintiffs must allege that their "protected activity was a substantial motivating factor in . . . [D]efendant[s'] conduct," that is, "there was a nexus between [Defendants'] actions and an intent to chill speech." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (citing *O'Brien v. Welty*, 818 F.3d 920, 933-34 (9th

---

[4] The Court also disagrees that Plaintiffs' allegations of indiscriminate force to support their Fourth Amendment claim are inconsistent with their allegations of discriminate force in support of their First Amendment claim. (Reply at 6-7.) Plaintiffs' allegations are not mutually exclusive (i.e., Plaintiffs allege that the PPB Officers fired indiscriminately at the crowd of counter protestors only), but even if they were, Plaintiffs may plead in the alternative. *See Wi-LAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1023 (S.D. Cal. 2019) (noting that FED. R. CIV. P. 8 "allows parties to plead inconsistent factual allegations in the alternative").

PAGE 13 – OPINION AND ORDER

Cir. 2016) and *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010)). "As with proof of motive in other contexts, this element of a First Amendment retaliation suit may be met with either direct or circumstantial evidence[.]" *Ulrich v. City & Cty. of S.F.*, 308 F.3d 968, 979 (9th Cir. 2002) (internal citation omitted) (citing *Allen v. Iranon*, 283 F.3d 1070, 1074 (9th Cir. 2002) and *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). "Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citations omitted). "At the pleading stage, a plaintiff adequately asserts First Amendment retaliation if the complaint alleges plausible circumstances connecting the defendant's retaliatory intent to the suppressive conduct." *Ariz. Students' Ass'n*, 824 F.3d at 870 (citing *O'Brien*, 818 F.3d at 933-35); *O'Brien*, 818 F.3d at 936 (concluding that the "allegations in the [complaint] ma[d]e it at least 'plausible' that [the] defendants' actions were substantially motivated by opposition to [the plaintiff's] protected speech and expressive conduct").

Plaintiffs allege that Defendants used excessive force against Plaintiffs in retaliation for their protected speech and with an intent to chill their speech. (Compl. ¶¶ 54-59.) In support of their claim, Plaintiffs allege that PPB representatives coordinated with Gibson and offered to provide security at Patriot Prayer events. *See* Compl. ¶ 14 (alleging that PPB "ha[d] a history of coordinating with Gibson and his right-wing supporters to organize PPB security at Patriot Prayer's events"); Compl. ¶ 54 (referencing text messages between PPB and Gibson).[5] Plaintiffs also allege that "PPB did not use weapons against or try to detain Patriot Prayer for failing to

---

[5] These allegations distinguish this case from *Moss*, 572 F.3d at 970-71, where the plaintiffs pled only a "bald allegation of impermissible motive" based on the fact that law enforcement officers moved the location of anti-President Bush protestors but not pro-President Bush protestors or others in the area.

PAGE 14 – OPINION AND ORDER

obey their orders" at the Protest, but PPB did fire on the counter protestors. (Compl. ¶ 18.) The Court finds that Plaintiffs' allegations are sufficient at the pleading stage to support their claim that Defendants targeted them for their speech.[6] *See, e.g., Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994) (finding, in a retaliatory arrest case, that the jury could reasonably infer that an officer was opposed to the plaintiff's beliefs); *McCarthy v. Barrett*, 804 F. Supp. 2d 1126, 1137-38 (W.D. Wash. 2011) (holding that a reasonable juror could conclude that the officers "intended to deter protestors' protected speech based on their association with certain student political organizations" because the police department focused its attention on members of organizations the police assumed were anarchists and based on "evidence of the numerous and frequently changing restrictions employed throughout the entire protest").[7]

### B.   Negligence Claim

Defendants move to dismiss Plaintiffs' negligence claim on the ground that Plaintiffs have failed to plead facts to support their claim that the City acted unreasonably in light of a foreseeable risk of harm. (Mot. to Dismiss at 10; *see also* Compl. ¶ 49 ("[B]y firing their lethal weapons directly into a passive crowd on August 4, 2018, an agent of City of Portland created an

---

[6] Plaintiffs' allegations regarding Defendants' alleged association with Gibson are relevant to their First Amendment claim, and therefore the Court denies Defendants' motion to strike paragraphs 54 through 59. *See City of L.A. v. Citigroup Inc.*, 24 F. Supp. 3d 940, 956 (C.D. Cal. 2014) (finding that paragraphs were not scandalous under Rule 12(f) where "every paragraph relate[d] in some way to mortgage-lending practices" and those paragraphs that detailed practices that were not Defendants' still "serve[d] a contextual purpose that the Court finds entirely proper").

[7] Defendants also ask the Court to order Plaintiffs to make a more definite statement of their *Monell* "custom and practice" claims pursuant to FED. R. CIV. P. 12(e), but the Court finds that Plaintiffs' allegations are specific enough to place Defendants on notice that Plaintiffs' claims apply to both plaintiffs Cantu and Molina. *See Medrano v. Kern Cty. Sheriff's Officer*, 921 F. Supp. 2d 1009, 1018 (E.D. Cal. 2013) ("The Court must deny [a motion for a more definite statement] if the complaint is specific enough to notify defendant of the substance of the claim being asserted." (citation omitted)).

PAGE 15 – OPINION AND ORDER

unnecessary and unreasonable risk of harm against all present.").) The Court finds that if it accepts Plaintiffs' factual allegations as true, Plaintiffs have plausibly alleged that it was foreseeable to Defendants that firing projectiles at protestors under these circumstances could result in the harm that befell Plaintiffs. *See Fazzolari v. Portland Sch. Dist.*, 303 Or. 1, 17 (1987) ("[T]he issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff."). Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' negligence claim, as well as Defendants' motion to strike Plaintiffs' allegations in support. *See Sirois*, 285 F. Supp. 3d at 1161 (denying the defendant's motion to strike because "[w]hile these allegations are, in some ways, sensational and salacious, and it is understandable that the [d]efendants wish to keep the details hidden, the challenged paragraphs are directly related to [the plaintiff's] claims").[8]

### C.    IIED Claim

Defendants move to dismiss Plaintiffs' intentional infliction of emotional distress ("IIED") claim or, in the alternative, make a more definite statement. (Mot. to Dismiss at 12.)

To establish an IIED claim, a plaintiff must demonstrate that: (1) the defendant intended to inflict severe mental or emotional distress; (2) the defendant's acts caused the plaintiff severe mental or emotional distress; and (3) the defendant's acts consisted of an "extraordinary transgression of the bounds of socially tolerable conduct." *McGanty v. Staudenraus*, 321 Or. 532, 543 (1995) (citation and quotation marks omitted). The intent element may be satisfied where the

---

[8] The Court also denies Defendants' motion for a more definite statement of the negligence claim (Mot. to Dismiss at 11), because it is clear that Plaintiffs' claim refers to both plaintiffs Cantu and Molina. (Compl. ¶ 49.)

PAGE 16 – OPINION AND ORDER

actor knows that such distress is certain, or substantially certain, to result from his conduct. *Id.* at 550-51.

Here, Plaintiffs allege that Officer Doe 3 knocked Molina to the ground while she was complying with PPB's orders (Compl. ¶ 33), and that the PPB Officers intentionally fired projectiles at Cantu. (Compl. ¶¶ 23, 25.) Plaintiffs also allege that Defendants "intentionally and/or with reckless disregard inflicted severe emotional distress" (Compl. ¶ 50), and that Plaintiffs suffered emotional distress (Compl. ¶¶ 30, 62-63). Plaintiffs' allegations are clear, and sufficient to state an IIED claim. *See McGanty*, 321 Or. at 551 (finding that the plaintiff's allegation that the "[d]efendants' conduct was intentional and voluntary and [d]efendants knew or should have known that their actions would cause severe distress" were sufficient to state an IIED claim).

## CONCLUSION

For the reasons stated, the Court DENIES Defendants' Motion to Dismiss or Make a More Definite Statement (ECF No. 19).

DATED this 3rd day of June, 2020.

*Stacie F. Beckerman*
_____
STACIE F. BECKERMAN
United States Magistrate Judge