**Juan C. Chavez**, OSB #136428
Email: jchavez@ojrc.info
**Brittney Plesser**, OSB #154030
Email: bplesser@ojrc.info
**Alex Meggitt**, OSB #174131
Email: ameggitt@ojrc.info
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97208
Telephone: 503 944-2270
Facsimile: 971-275-1839

Attorneys for Aaron Cantu

**Juan C. Chavez**, OSB #136428
Email: jchavez@ojrc.info
**John Schlosser,** OSB # 104959
Email: jesattorney@gmail.com
PO Box 5248
Portland, OR 97208
Telephone: 503 944-2270
Facsimile: 971-275-1839

Attorneys for Tracy Molina

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| AARON CANTU, and TRACY MOLINA,<br><br>Plaintiffs<br><br>v.<br><br>CITY OF PORTLAND, *a municipal corporation*, CMDR. BRYAN PARMAN, SGT. JAMES MOONEY, OFC. ZACHARY FLIPPO, OFC. DEWEY MADISON, OFC. CASEY MCLEOD, *as individuals*,<br><br>Defendants | Case No. 3:19-cv-1606-SB<br><br>AMENDED COMPLAINT<br><br>(Violations of Civil Rights: 42 U.S.C. § 1983; Negligence; Battery; Assault; False Arrest; and Intentional Infliction of Emotional Distress)<br><br>**Jury Trial Demanded** |

Plaintiffs, by and through their attorneys, allege:

## NATURE OF ACTION

1.

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and ORS 30.265 by Aaron Cantu and Tracy Molina (plaintiffs). Plaintiffs bring this civil rights action because on August 4, 2018, the Portland Police Bureau ("PPB"), without provocation, attacked a group of people who had gathered to express opposition to fascism. Defendants used unlawful, excessive force against plaintiffs, shooting them with aerial munitions, and hitting them with batons. Plaintiffs were among the injured. Defendants chose to attack plaintiffs' group in part because they disagreed with the political message of the anti-fascist demonstrators and sympathized with the fascists. The acts and omissions of defendants violated plaintiffs' rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution. As a result of defendants' acts and omissions, plaintiffs suffered economic and noneconomic damages. Plaintiffs are entitled to damages and an award of attorneys' fees and costs.

## JURISDICTION AND VENUE

2.

This court has subject matter jurisdiction over plaintiffs' claims of violation of federal constitutional rights pursuant to 28 U.S.C. §§ 1331(a) and 1343 because the causes of action arise under 42 U.S.C. § 1983. This court has jurisdiction over plaintiffs' pendent state law claims under 28 U.S.C. § 1367.

///

///

3.

Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to plaintiffs' claims occurred in the District of Oregon and because defendants are subject to personal jurisdiction in the District of Oregon.

## TORT CLAIM NOTICE

4.

Prior to the institution of this action, each plaintiff provided notice of his or her claims to all necessary parties pursuant to ORS 30.275.

## PARTIES

5.

Plaintiff Aaron Cantu, at the time of filing and all material times, was a resident of Portland, Multnomah County, Oregon.

7.

Plaintiff Tracy Molina, at the time of filing and all material times, was a resident of Portland, Multnomah County, Oregon.

8.

Defendant City of Portland is a political subdivision of the State of Oregon. PPB is a department or division of the City. As a local governmental entity, the City of Portland is a suable person under 42 U.S.C. § 1983. At all material times, the City of Portland employed the John Doe defendants. At all material times, the John Doe defendants were acting pursuant to the City of Portland's laws, customs, and/or policies. Per ORS 30.285(1), the city must indemnify its officers for their tortious acts and is therefore liable for the purposes of this action by plaintiffs. On information and belief, the decision to indiscriminately use force against plaintiffs was made at a sufficiently high level as to be policy decision of the City of Portland.

9.

Defendant Commander Bryan Parman is a member of the Portland Police Bureau, and was acting under color of law at all times alleged in this complaint. Defendant Parman was the Incident Commander for the events described in this complaint, and exercised decision making and supervisory capacity over the officers policing this protest. He is sued in his personal capacity.

10.

Defendant Sergeant James Mooney was a member of the Portland Police Bureau, and was acting under color of law at all times alleged in this complaint. Defendant Mooney was a sergeant supervising Delta Squad, and is sued in his personal capacity.

11.

Defendant Officer Dewey Madison is a member of the Portland Police Bureau, and was acting under color of law at all times alleged in this complaint. Defendant Madison is sued in his personal capacity.

12.

Defendant Officer Casey McLeod is a member of the Portland Police Bureau, and was acting under color of law at all times alleged in this complaint. Defendant McLeod is sued in his personal capacity.

///

///

///

**GENERAL ALLEGATIONS**

13.

Across the country, following the election of Donald Trump, far-right extremists have rallied for the causes of white supremacy, white nationalism, and xenophobia. Since its formation in 2016, the right-wing extremist group Patriot Prayer marked Portland as a target for protest. Patriot Prayer and its right-wing allies' strategy and intent for doing so was to a) intimidate counter-fascist groups; b) force a confrontation with counter-fascist groups; and c) utilize police departments and city governments into imposing harsh crowd control measures on counter-fascist groups.

14.

Patriot Prayer, under the leadership of Joey Gibson, has worked together with other right-wing groups, including the Proud Boys to organize a series of right-wing demonstrations in Portland. The summer of 2018 had been marked by confrontations between Patriot Prayer and groups who have organized to oppose fascism in Portland. In the year leading up to the August 4, 2018 event, PPB along with other law enforcement departments used their weapons, such as so-called "Aerial Distraction Devices," bean bags, pepper balls, and flash-bang grenades, and personnel to attack, detain, and scatter counter-fascist protestors. Often, these attacks by PPB on counter-fascist protestors follow from little provocation on the part of the protestors.

///

///

///

///

///

15.

Gibson exploited these clashes as rhetoric in support of his 2018 senatorial bid in neighboring Washington state. PPB leadership has a history of coordinating with Gibson and his right-wing supporters to organize PPB for security at Patriot Prayer's events.[1]

16.

In the face of fascist rhetoric, counter-fascist groups in Portland and in other cities have rallied to express their disapproval of Patriot Prayer's presence and message. On August 4, 2018, plaintiffs attended the counter-fascist protest organized to oppose Patriot Prayer's rally. Plaintiffs, like a great multitude of other Portlanders, felt that Patriot Prayer's hate speech had no place in their city, and that they needed to stand in solidarity with the communities Patriot Prayer intended to terrorize.

**I. The Scene**

17.

On August 4, 2018, Joey Gibson arrived in downtown Portland to hold a "Gibson for Senate Freedom March," a rally in support of Gibson's campaign for a Washington state U.S. Senate seat. Gibson had called for his members to arrive armed.[2] Gibson made clear prior to the August 4, 2018 event that he believed violence was inevitable.[3] Prior to the rally happening Gibson had changed the venue from a federal park to the SW Waterfront at SW Naito Parkway.

---

[1] Text Conversations, Portland Police Bureau, pg. 61, https://www.portlandoregon.gov/police/article/712687

[2] Aaron Mesh, Katie Shepherd, Portland Braces for Street Clash as Proud Boys and Antifascists Rally Their Troops for Waterfront Protests, Willamette Week (August 1, 2018), https://www.wweek.com/news/courts/2018/08/01/portland-braces-for-street-clash-as-proud-boys-and-antifascists-rally-their-troops-for-waterfront-protests/

[3] Katie Shepherd, Senate Candidate Joey Gibson Has Moved His Next Portland Protest to a Place Where Right-Wing Marchers Can Carry Guns, Willamette Week (July 27, 2018), https://www.wweek.com/news/2018/07/27/senate-candidate-joey-gibson-has-moved-his-next-portland-protest-to-a-place-where-right-wing-marchers-can-carry-guns/

This venue change allowed right-wing groups to openly carry weapons, including AR-15s, as they had done at a rally in Washington the previous month.[4]

18.

Despite several orders by PPB to move into a designated park, Patriot Prayer members refused to follow police orders. The refusal to obey PPB orders was motivated by Patriot Prayer's leadership insisting to retain access to firearms. A text message sent by Gibson on August 4, 2018 at 11:36 PST to PPB Lt. Niiya, Patriot Prayer's liaison in PPB, shows that Gibson did not want to be disarmed when entering the fenced area of Tom McCall Park.[5] PPB did not use their weapons against or try to detain Patriot Prayer for failing to obey their orders. Instead, PPB allowed Gibson to flaunt his impunity, cross through the line of police officers on SW Naito Parkway and confront counter-demonstrators.[6]

19.

On information and belief, during planned protests PPB sets up a "command center" to house command staff, responsible for supervising PPB members' crowd control tactics. Either Chief Danielle Outlaw or someone very close to the chief in rank directs the movements of PPB members on the ground and directs how and when PPB members should use their crowd control weapons. On information and belief, PPB's response to the events on August 4, 2018 was coordinated and supervised from such a command center.

20.

At approximately 2:00 pm, Gibson's rally marched southward in the Tom McCall Waterfront Park along SW Naito—again unimpeded by PPB.

---

[4] *Id.*
[5] Text Conversations, Portland Police Bureau, pg. 61, https://www.portlandoregon.gov/police/article/712687
[6] Joey Gibson, *Freedom Rally Highlights*, YouTube (August 6, 2018), https://youtu.be/CvM17_lT8i4

21.

Plaintiffs moved south with a portion of the leftist-protest crowd toward Gibson's next location in Tom McCall Park. Others, like plaintiffs, gathered across the street from Gibson's right-wing rally, on SW Naito and SW Columbia St.

**II. Aaron Cantu**

22.

Mr. Cantu peacefully assembled on SW Naito Parkway along with the other counter-fascist protestors. Immediately, he found a heavy police presence trained primarily on the counter-fascist protestors. Aware that Gibson had called for his members to come armed and having heard of the violence perpetrated by Patriot Prayer members and PPB at past demonstrations, Mr. Cantu wore a bicycle helmet on his head.

23.

When Patriot Prayer marched southward in the Tom McCall Waterfront Park along SW Naito, Mr. Cantu moved with a portion of the counter-fascist protestors toward Patriot Prayer's next location. Mr. Cantu saw no projectiles thrown nor witnessed any violence from the people on the counter-fascist side and had no reason to believe that he was in danger at this location. Mr. Cantu did not hear any warnings about impending police operations or orders to disperse from PPB while at SW Columbia Street and SW Naito.

24.

Then, out of nowhere, Mr. Cantu heard a loud explosion. Mr. Cantu managed to move halfway down the block between SW Naito and SW 1st Avenue on SW Columbia Street. When he heard the first explosion, he immediately started running away. To the best of his recollection, Mr. Cantu heard three or more explosions.

25.

While running away, Mr. Cantu was struck in the head with a projectile fired at him by PPB. The projectile penetrated his helmet.



26.

As most of the clear video evidence exposes, PPB initiated their attack on the counter-fascist protestors following no provocation.[7] Videos also show that two PPB officers fired explosives, identified in one report as Aerial Warning/Signaling Munitions (AW/SM), or known colloquially as "flash bangs," at an angle directed at the crowd in contravention to the standard use of such a weapon. Videos show that PPB officers took time to examine the crowd, load their weapons, and place their targets on the counter-fascist protestors. Upon information and belief,

---

[7] Unicorn Riot (@UR_Ninja), Twitter (August 4, 2018, 2:41 pm) https://twitter.com/UR_Ninja/status/1025859285727813632

the officers whom fired this volley of explosives at the crowd were Defendants Flippo and Madison. Defendant Mooney supervised Flippo and Madison when they took these actions, and either directed them to do so, or acquiesced to their unconstitutional conduct.

27.

Reports suggest that PPB officers primarily fired into the crowd to retrieve police vehicles left unattended on SW Columbia Street.[8]

28.

Head bleeding, eyes blurry, unable to yell or speak, Mr. Cantu had to run through the intersection of SW Columbia Street and SW 1st Avenue, an intersection still open to vehicular traffic, to get away from the police launching explosives at the crowd. He sat down at a nearby bus stop. Attending street medics found Mr. Cantu bleeding and disoriented.

[8] Katie Shepherd, Dispatch Records Show Portland Police Fired Flash-Bangs at Crowd to Recover Police Cruisers, Willamette Week (October 23, 2018), https://www.wweek.com/news/courts/2018/10/23/dispatch-records-show-police-fired-flash-bangs-at-crowd-to-recover-police-cruisers/



29.

PPB officers continued to assault the counter-fascist protestors down SW Columbia Street, continuing to fire at the fleeing protestors blocks away. While Mr. Cantu sat at the bus stop and was attended to by a local street medic, PPB continued to fire projectiles in his direction. The medics had to move him away from this continuously dangerous situation.

30.

Eventually, a medic got Mr. Cantu to a hospital. Mr. Cantu had suffered a traumatic brain injury, likely one that would have been fatal had he not been wearing a bike helmet. The injury caused hemorrhaging, and the following five centimeter complex wound to his head:




32.

In addition to the financial costs of having his grievous head wound treated, Mr. Cantu still suffers from the physical and emotional pain of having been subjected to extreme police violence. Currently, Mr. Cantu suffers from dizziness and tinnitus. Closer in time to the incident, Mr. Cantu suffered from more pronounced dizziness, tinnitus, difficulty with cognitive tasks, and emotional trauma. Mr. Cantu works as a field engineer and missed a week of work following this incident.

**II. Tracy Molina**

33.

Ms. Molina joined the demonstrations to protest Patriot Prayer's presence and ideology on August 4, 2018 because she, like hundreds of other counter-protestors, believed in taking a stand against the hateful ideology and violent acts that groups like Patriot Prayer represent and propagate. She had a protest sign which read, "Hey Racists Stop Making Your Ignorance Our Problem Grow Up or Go Home." When PPB took to dispersing the counter-fascist protestors, Ms. Molina feared that Patriot Prayer and Proud Boys members were also pursuing the counter-fascist protestors.

34.

Chaos followed PPB's firing of explosives into the crowd assembled on SW Columbia. Many people, like Ms. Molina, were closer to SW 1st Avenue than SW Naito and could not see PPB's initial launch of explosives into the crowd.

35.

As Ms. Molina was complying with PPB's orders to move along the sidewalk, a PPB officer, Ofc. Casey McLeod, suddenly grabbed her protest sign from behind. Surprised, Ms. Molina turned around to hold on to her sign. Defendant Madison then knocked her to the ground with such force that she fell and rolled into the middle of the street, where a large group of officers, including Defendant Madison, dog-piled her in a tackle and arrested her.

36.

Ms. Molina was charged with Attempt to Commit a Class C/Unclassified Felony (Misdemeanor Class A), Disorderly Conduct in the Second Degree (Misdemeanor Class B), and

Interfering w/ Peace/Parole and Probation Officer (Misdemeanor Class A). Ms. Molina plead "Not Guilty" and the case was dismissed in her favor.

37.

Ms. Molina suffered physically and emotionally from the violence she endured at the hands of PPB officers.

**FIRST CLAIM FOR RELIEF**
**(Excessive Force – Violation of Fourth and Fourteenth Amendments)**

38.

**Count 1: Individual Liability of Flippo and Madison**

As alleged above, Defendants Fllippo and Madison use of force was objectively unreasonable under the circumstances, constituted excessive force, and was an unreasonable, and unjustifiable use of deadly force in the cases of Mr. Cantu.

39.

**Count 2: Individual Liability of Parman and Mooney**

As alleged above, Defendants Parman and Mooney directed the objectively unreasonable use of force perpetrated by Flippo and Madison and are therefore individually liable.

40.

**Count 3: Municipal Liability – Custom and Practice of Excessive Force Against Protestors**

The City of Portland has a custom and practice of using militarized force against protestors. Given the repeated extreme uses of force against protestors, it has become the norm to expect this level of violence from PPB. PPB's custom and practice is to use force indiscriminately against crowds of protestors with little to no provocation. When force is used, PPB makes no effort to limit its force to individuals who actually pose a threat of violence, instead using force indiscriminately at anyone who happens to be in the crowd.

41.

**Count 4: Municipal Liability – Action of Policymaking Officials**

The decision to fire explosives at the heads of protestors, and use projectiles on fleeing, nonviolent protestors in this case was made by PPB officials Parman and Mooney, who are sufficiently senior that the decision may fairly be said to represent official policy of the City of Portland.

**SECOND CLAIM OF RELIEF**
**(Assault, Battery, and Negligence – State Law Claim)**
**(Against the City of Portland)**

42.

**Count 5: Assault**

Officers Flippo and Madison committed an assault upon Mr. Cantu by intentionally attempting to cause harmful physical contact with the plaintiff by firing an aerial distraction device at the crowd of counterdemonstrators. Officers McLeod and Madison committed an assault upon Ms. Molina by intentionally attempting to cause harmful physical contact with Ms. Molina by grabbing her sign, pushing her to the ground, and dog-pile tackling her in the street. Officers Flippo, Madison, and McLeod had the then-present ability to carry out the assaults, as detailed above.

43.

**Count 6: Battery**

Officers Flippo and Madison committed a battery against Mr. Cantu because Officers Flippo and Madison had an intent to cause harmful physical contact with Mr. Cantu and did cause harmful physical contact by Officers Flippo and Madison intentional act of firing aerial distraction devices directly at the crowd of counter-fascist protestors, striking Mr. Cantu in the

skull. Officers Madison and McLeod committed a battery against Ms. Molina because Officers Doe had an intent to cause harmful physical contact with her and did cause harmful physical contact when Officer McLeod grabbed Ms. Molina's protest sign, and Officers Madison pushed her to the ground and dog-pile tackled Ms. Molina on the street pavement.

44.

**Count 7: Negligence**

Given the repeated extreme uses of force against protestors, it has become the norm to expect this level of violence from PPB. Without adequate training, supervision, or review of PPB's officers, defendant City of Portland has created an environment of militarized responses to mild forms of dissent. Additionally, by firing their lethal weapons directly into a passive crowd on August 4, 2018, agents of City of Portland created an unnecessary and unreasonable risk of harm against all present. City of Portland prioritized the safety of their vehicle, and Patriot Prayer's ability to freely move, over plaintiffs' lives, safety, and liberties. It was foreseeable that plaintiffs would be injured in the way they were. Despite knowledge of this risk, and the foreseeability of this injury, City of Portland breached their duty owed to plaintiffs, damaging them.

45.

**Count 8: Intentional Infliction of Emotional Distress**

As described above, the agents and employees of the City of Portland intentionally and/or with reckless disregard inflicted severe emotional distress on plaintiffs.

46.

As described above, the agents and employees of City of Portland's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.

47.

As a result of their outrageous behavior, plaintiffs were harmed physically and emotionally by their behavior.

48.

**Count 9: False Arrest**

As described above, City of Portland intentionally and unlawfully restrained Ms. Molina's freedom of movement, causing her arrest and subsequent harm.

**THIRD CLAIM OF RELIEF**
**(Retaliation - Violation of the First Amendment)**

49.

**Count 7: Individual Liability of John Does 1-20 – First Amendment**

Officers Flippo and Madison used deadly force on the crowd of counter-protestors when they shot aerial distraction devices at the crowd, rather than over the crowd or not at all, striking Mr. Cantu, a counterdemonstrator, in the skull. As detailed above, defendants preferred the speech rights of Mr. Gibson and his followers over the speech rights of the counter-fascist protestors. Officers Flippo and Madison retaliatory motive was the but-for cause of Mr. Cantu's injuries. By shooting Mr. Cantu the defendants in fact chilled Mr. Cantu's political speech.

50.

Officer McLeod grabbed Ms. Molina's protest sign, then pushed her to the ground, and other officers proceeded to dog-pile tackle Ms. Molina. Defendants preferred the speech rights of Mr. Gibson over those of the counter-protestors. Defemdants retaliatory motive was the but-for cause of Ms. Molina's injuries. By attacking Ms. Molina the defendants in fact chilled her political speech.

51.

John Does 12-20 made the supervisory decision to direct the PPB attack on anti-fascist protestors rather than fascist protestors at least in part because they sympathized with the fascists and disagreed with the anti-fascists.

**Count 9: Municipal Liability – First Amendment**

52.

The City of Portland has a custom and practice of using militarized force against left-wing or counter-fascist protestors. The defendants' use of force was intended to punish a group of protestors *en masse* for their political speech. The City of Portland does not use such force against right-wing protestors or fascist protestors, such as the Proud Boys or Patriot Prayer, despite their disobedience of officers' orders. The supervisory decision to fire "Aerial Distraction Devices" into a crowd, and push and tackle protestors was made in retaliation for the protestors' protected speech.

53.

The supervisor defendants like Parman and Mooney who made the decision to attack anti-fascist demonstrators are sufficiently senior so that their decision can fairly be said to be the official policy of the City of Portland.

## FOURTH CLAIM OF RELIEF
## (Violations of the Oregon Constitution)
## (Against the City of Portland)

54.

The defendant City has a policy and/or a custom and practice of using lethal and unlawful force to suppress speech in violation of Oregon Constitution Art. I, §§ 8 and 9, which respectively protects Oregonians from "restrain[ts of] free expression of opinion" and

"unreasonable searches and seizures." Plaintiffs are entitled to declaratory relief, declaring that the City's policy and/or custom and practice violates the Oregon Constitution Art. I, §§ 8 and 9. Plaintiffs are also entitled to injunctive relief enjoining defendant and its successors to cease this policy and/or custom and practice.

**DAMAGES**

55.

As a direct and proximate result of the conduct of the defendants, Mr. Cantu suffered both economic and non-economic damages. Mr. Cantu still suffers from the physical and emotional pain of having been subjected to extreme police violence. Currently, Mr. Cantu suffers from dizziness and tinnitus. Closer in time to the incident, Mr. Cantu suffered from more pronounced dizziness, tinnitus, difficulty with cognitive tasks, and emotional trauma. Certain loud sounds would trigger post-traumatic responses that bear a heavy emotional cost on him. Mr. Cantu has sustained emotional distress, including, but not limited to, pain and suffering, discomfort, fear, frustration, a fear of trusting those in positions of power, and anxiety. Mr. Cantu works as a field engineer and missed a week of work following this incident.

56.

As a direct and proximate result of the conduct of the defendants, Ms. Molina suffered emotional distress, discomfort, fear, frustration, and humiliation, including attendant physical symptoms of emotional distress. Ms. Molina lost time and liberty from her arrest and subsequent criminal prosecution. Being pushed to the ground and tackled by Officers Does was physically painful.

57.

As a direct and proximate result of the conduct of defendants, plaintiffs have incurred medical expenses and lost wages. Plaintiffs' economic damages are in an amount to be proven at trial.

## REASONABLE ATTORNEY'S FEES AND COSTS

42 U.S.C. § 1988(b) allows "the prevailing party . . . a reasonable attorney's fee as part of the costs. . ." in an action brought under 42 U.S.C. § 1983.

Plaintiffs requests that the court grant reasonable attorneys' fees in this action.

## CONCLUSION

**WHEREFORE**, plaintiffs pray for their costs and disbursements incurred herein and for the following in accordance with the proof at trial:

1. Economic damages;
2. Non-economic damages;
3. Attorney's fees;
4. Declaratory relief in relation to Claim 4;
5. Injunctive relief in relation to Claim 4; and
6. Any other relief the court deems proper.

**DATED** this 22nd day of September 2020.

/s/ *Juan C. Chavez*
**Juan C. Chavez**, OSB #136428
jchavez@ojrc.info
**Alex Meggitt**, OSB # 174131
alex.meggitt@gmail.com
**Brittney Plesser**, OSB #154030
bplesser@ojrc.info
Oregon Justice Resource Center
(503) 944-2270

**John Schlosser,** OSB # 104959
Email: jesattorney@gmail.com
PO Box 5248
Portland, OR 97208
Telephone: 503 944-2270
Facsimile: 971-275-1839